## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| CELESTE WHITTLE; J.S.J., a minor child by Celeste Whittle, Parent and Next Friend; A.V.S., a minor child by Celeste Whittle, Parent and Next Friend; JESSE SERRANO; ESPERANZA SERRANO; HORACIO SERRANO; on behalf of themselves and others similarly situated, | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| | § | Civil Action |
| Plaintiffs, | §<br>§ | No: 1:25-CV-713 |
| | § | |
| v. | §<br>§ | |
| | § | |
| BROOKSIDE FARMS, LLC; WILLIAM G. FRITZ (individually); JOSH FRITZ (individually); | §<br>§<br>§ | |
| Defendants. | | |

## PLAINTIFFS' COMPLAINT

### INTRODUCTION

1. Defendants recruited and hired migrant farmworkers, including Plaintiffs, from outside the state of Michigan to work at its packing facility and fields in and around Gobles, Michigan.

2. The migrant farmworkers and their family members, including Plaintiffs, were housed at migrant labor camps owned and controlled by Brookside Farms, LLC.

3. Defendants housed Plaintiffs in substandard conditions.

4. Defendants used the H-2A program through farm labor contractors to recruit agricultural workers on H-2A visas.

5. The H-2A program provides temporary work visas to individuals from foreign countries to enter the U.S. and work in agricultural labor for up to 10 months per year.

6.  To participate in the H-2A program, agricultural employers and their labor contractors must follow strict federal regulations designed to ensure that American workers are genuinely unavailable and that H-2A workers will not be used to lower the wages and working conditions of American workers.

7.  Employers are specifically forbidden from using the H-2A program in instances where qualified U.S. workers are available to perform the job, or where the wages and working conditions of the H-2A workers are so poor that they drive down the wages and working conditions of U.S. workers in similar employment. 8 U.S.C. § 1188(a).

8.  The working conditions in the H-2A program are highly regulated; wages are set on a state-by-state basis, each year, by the U.S. Department of Labor (hereinafter "USDOL").

9.  In order to implement these important policy interests, federal regulations require that H-2A employers pay at least the Adverse Effect Wage Rate ("AEWR") to H-2A workers and to U.S. workers in corresponding employment.

10. The AEWR for Michigan was $15.37 in 2022, $17.34 in 2023, and $18.50 in 2024.

11. An employer may not pay U.S. workers less than the AEWR if they work in corresponding employment with H-2A workers. 20 C.F.R. §655.122(a).

12. Defendants paid Plaintiffs and other U.S. workers less than the AEWR rates.

13. H-2A workers who worked at Brookside Farms were paid the AEWR.

14. Plaintiffs bring this action to obtain redress for the Defendants' violations of Plaintiffs' rights, during Plaintiffs' employment for the 2019-2024 seasons at Brookside Farms, LLC, arising under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq*.; the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq*.; the Workforce Opportunity Wage Act, (WOWA) 2014 M.C.L.S. §§

408.11 *et seq.* (2014); the Improved Workforce Opportunity Wage Act (IWOWA)

M.C.L.S. §§ 408.931*et seq* (2018).

## JURISDICTION AND VENUE

15. This Court has jurisdiction based on federal questions jurisdiction pursuant to 28 U.S.C. §1331.

16. The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. §1854(a) and 29 U.S.C. §216(b).

17. This court has jurisdiction pursuant to diversity jurisdiction pursuant to 28 U.S.C. §1332 because the matter in controversy exceeds the sum of $75,000 and the matter is between citizens of different states.

18. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1376 over Plaintiffs' claims arising under state law because these claims are so related to the federal claims, they form part of the same case and controversy.

19. Venue in this court is proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omission giving rise to the claims asserted took place in Van Buren County, Michigan and the Defendants reside and do business in Van Buren County.

## PARTIES

**Plaintiffs**

20. Horacio Serrano is a resident of Texas and at all relevant times maintained his permanent residence in Weslaco, Hidalgo County, Texas.

21. Esperanza Serrano is a resident of Texas and at all relevant times maintained her permanent residence in Weslaco, Hidalgo County, Texas.

22. Horacio Serrano and Esperanza Serrano will collectively be known as the Serrano Plaintiffs.

23. Jesse Serrano is a resident of Texas and at all relevant times maintained his permanent residence in Weslaco, Hidalgo County, Texas.

24. Celeste Whittle is a resident of Texas and at all relevant times maintained her permanent residence in Weslaco, Hidalgo County, Texas.

25. Jesse Serrano and Celeste Whittle will collectively be known as the Whittle Plaintiffs.

26. The Whittle Plaintiffs and Serrano Plaintiffs are together known as the "Working Plaintiffs"

27. J.S.J. is a non-working minor child of the Whittle Plaintiffs. He appears by his parent and next friend Celeste Whittle.

28. A.V.S. is a non-working minor child of the Whittle Plaintiffs. She appears by her parent and next friend Celeste Whittle.

29. J.S.J. and A.V.S. are together known as the "Minor Child Plaintiffs."

**Defendants**

30.  Defendant Brookside Farms, LLC is a Michigan limited liability corporation and agricultural employer that has its principal place of business at 17125 36th Street, Gobles, MI 49055.

31. Defendant Brookside may be served via its registered agent, William G. Fritz, at 17125 36th Street, Gobles, MI 49055.

32. At relevant times to this action, Defendant Brookside was the "employer" of each Working Plaintiff within the meaning of the AWPA, 29 U.S.C. §1802(2), the FLSA, 29 U.S.C. §203(d), the WOWA M.C.L.S. §408.412(d) and IWOWA M.C.L.S. § 408.932(d).

33. At all relevant times to this action, on information and belief, Brookside was an enterprise engaged in commerce whose gross annual sales exceeded $500,000 per year.

34. During each week in which the Working Plaintiffs were employed by Defendant Brookside, they produced blueberries for commerce.

35. In each workweek in which Plaintiffs worked for Brookside Farms, Brookside employed two or more employees who handled, sold, or worked with blueberries that Brookside produced for commerce.

36. During each week in which the Working Plaintiffs were employed by Defendant Brookside, Brookside marketed and sold goods to consumers outside Michigan via its website and retailers.

37. During each week in which the Working Plaintiffs were employed by Defendant Brookside, Defendant Brookside sold blueberries to wholesalers outside of Michigan.

38. At relevant times each year from 2019 to 2024, Defendants assigned the Serrano Plaintiffs to reside in the housing at 37946 CR 388, Gobles MI 49055.

39. The Serrano Plaintiffs resided in housing at 37946 CR 388, Gobles MI 49055.

40. In each year from 2022 to 2024, Defendant Brookside provided Plaintiffs housing during the Working Plaintiffs' employment at Defendant Brookside's Gobles location.

41. Defendant William Fritz is an individual and maintains permanent residence in Michigan.

42. During the time relevant to this action, Defendant William Fritz was the owner and principal of Brookside.

43. At all times relevant to this action, Defendant William Fritz was an "employer" of each Working Plaintiff within the meaning of the AWPA, 29 U.S.C. §1802(2) and the FLSA, 29 U.S.C §203(d); WOWA M.C.L.S. §408.412(d) and IWOWA M.C.L.S. § 408.932(d).

44. During the years relevant to this action, Defendant William Fritz was an officer of Defendant Brookside, managed the day-to-day operations of Defendant Brookside, determined the salaries, and made final hiring and firing decisions.

45. During the relevant years, Defendant William Fritz directed the creation and maintenance of employment records for the Working Plaintiffs and other Brookside employees

46. During the relevant years, Defendant William Fritz directed and approved agents of Defendant Brookside, including FLCs, employees, and other offices such as his son, Defendant Josh Fritz, and Jose Ramirez, to recruit migrant workers, including the Working Plaintiffs.

47. From 2022 to 2024, Defendant William Fritz directed and approved the use of farm labor contractors ("FLCs"), including but not limited to Hernandez Harvesting, Margarito Hernandez, and Prime Workforce LLC to recruit H-2A workers.

48. During the years relevant to this action, Defendant William Fritz controlled and provided migrant agricultural worker housing under the AWPA, 29 U.S.C. §1823, including the agricultural worker camp sites located at 37946 CR 388, Gobles, MI 48055 (henceforth F-camp) and 37936 CR 388, Gobles, MI 49055, (henceforth S-camp).

49. From 2019 to 2024, Defendant William Fritz used F-camp to house migrant agricultural workers, including Serrano Plaintiffs.

50. In 2022, Defendant William Fritz used 37936 CR 388, Gobles, MI 49055 (henceforth S-camp) to house the Whittle Plaintiffs and Minor Child Plaintiffs.

51. Defendant Josh Fritz is an individual and maintains a permanent place of residence in Michigan.

52. At all times relevant to this action, Defendant Josh Fritz was an "employer" of each Working Plaintiffs within the meaning of the AWPA, 29 U.S.C. §1802(2) and the FLSA, 29 U.S.C §203(d).

53. At all times relevant to this action, Defendant Josh Fritz had the ability to hire and fire Brookside's employees.

54. During the relevant period, Defendant Josh Fritz exercised his authority to hire and fire employees on behalf of Brookside, including the Working Plaintiffs.

55. During the relevant time period, Defendant Josh Fritz set the rate and method of pay for the Working Plaintiffs and other Brookside employees.

56. During the relevant time period, Defendant Josh Fritz supervised and controlled the work schedules of the Working Plaintiffs, H-2A workers, and other Brookside employees.

57. During the relevant time period, Defendant Josh Fritz directed the Working Plaintiffs, H-2A workers, and other Brookside employees by supervising their work and assigning them to different work locations.

58. On information and belief, Defendant Josh Fritz directed the creation and maintenance of employment records for the Working Plaintiffs and other Brookside employees during the relevant period.

59. During the time period relevant to this action, Defendant Josh Fritz was actively involved in managing the day-to-day operations of Brookside.

60. Each blueberry season from 2019 to 2024, Defendant Josh Fritz additionally spoke to and coordinated with migrant workers recruited by Brookside employees, agents, and farm labor contractors to confirm their employment with Brookside.

61. During the time period relevant to this action, Defendant Josh Fritz controlled and provided migrant agricultural worker housing under the AWPA, 29 U.S.C. §1823,

including the agricultural worker camp sites located at F-camp and 37936 CR 388,

Gobles, MI 49055.

## FACTS

Defendants Recruited and Hired Working Plaintiffs Without Providing Required Written

Disclosures between 2019 to 2024

62. Defendants, directly and through their agents, recruited workers, including the Working
    Plaintiffs, from Weslaco, Texas.

63. The Serrano Plaintiffs were initially recruited to work for Defendant Brookside and
    Defendant William Fritz in the early 2000s by Jose Ramirez (henceforth Ramirez), who
    was a supervisor and agent for Brookside.

64. Ramirez connected the Serrano Plaintiffs directly with Defendant William Fritz to be
    hired to work at Brookside in the early 2000s.

65. Each subsequent season, the Serrano Plaintiffs, while still in Texas, communicated
    directly with Defendant William Fritz and agents of Defendant Brookside each year
    about their availability and confirmed the start date and details of their summer work at
    Brookside.

66. These initial communications occurred each year in April, May, or early June through
    phone calls.

67. In 2022, Whittle Plaintiffs, while they were still in Texas, were recruited by Ramirez and
    hired by Defendant William Fritz to work at Defendant Brookside beginning on or
    around May 2022.

68. In 2023 and 2024, Whittle Plaintiffs, while they were still in Texas, communicated
    directly with Defendants William Fritz or Josh Fritz each year about their availability and

to confirm their start date and the details of their work at Brookside during the summer months.

69. In 2024, the Whittle Plaintiffs contacted Josh Fritz about working at Brookside for the 2024 season on or around April 27, 2024 and were informed that there was work for them.

70. Celeste Whittle confirmed employment on or around June 1, 2024 with Defendant Josh Fritz, when he told Celeste Whittle that there was work available and that he was "excited" to have them coming back to Michigan for the season.

71. In reliance on Defendant Josh Fritz's verbal confirmation of employment at Brookside, Celeste Whittle submitted her two week notice at her employment as a hospice worker.

72. On June 14, 2024, Celeste Whittle called Defendant Josh Fritz to inform Brookside that the Serrano-Whittles intended to arrive on or around June 18, 2024.

73. Celeste Whittle then contacted Defendant William Fritz via phone call to clarify whether Whittle Plaintiffs still had employment at Brookside.

74. Defendant William Fritz informed Celeste Whittle that Whittle Plaintiffs would still have employment with Brookside upon their arrival to Michigan.

75. Celeste Whittle confirmed with Defendant William Fritz that the Whittle Plaintiffs were planning to arrive in Michigan on June 18, 2024.

76. Celeste Whittle again confirmed the arrival date with Defendant Josh Fritz via phone call.

77. For each relevant year in this action, Defendant William Fritz and agents of Defendant Brookside verbally informed the Working Plaintiffs while they were still in Texas that they would have:

    a.   Employment from mid-June to mid-September;

    b.   employment in packing and sorting blueberries and operating equipment at Defendant Brookside's Gobles location; and

    c.   Housing for the Plaintiffs at a Defendant Brookside-owned migrant housing camp.

78. Based on these terms, the Serrano Plaintiffs migrated from Weslaco, Texas to Gobles, Michigan on or around mid-June of each year from 2019 through 2023.

79. Each year, Serrano Plaintiffs returned from Gobles, Michigan back to Weslaco, Texas on or around mid-September in 2019, 2020, 2021, 2022, and 2023.

80. The Serrano Plaintiffs did not receive written disclosures containing the terms of their employment at Defendant Brookside prior to leaving Texas for Michigan in any year from 2019 through 2023.

81. Horacio Serrano did not receive written disclosures containing the terms of his employment at Defendant Brookside prior to leaving Texas for Michigan in 2024.

82. The Whittle Plaintiffs did not receive written disclosures containing the terms of their employment at Defendant Brookside prior to leaving Texas for Michigan from 2022 to 2024

The Working Plaintiffs Travel from Texas to Michigan between 2019-2024

83. After Defendant William Fritz and agents of Defendant Brookside recruited Working Plaintiffs and based on the provision of housing and work availability, the Plaintiffs migrated from Weslaco, Hidalgo County, Texas so the Working Plaintiffs could begin working for Brookside.

84. Esperanza Serrano travelled from Texas to Michigan every year from 2019 through 2023.

85. Horacio Serrano traveled from Texas to Michigan each year from 2019 through 2024.

86. The Whittle Plaintiffs and Minor Child Plaintiffs travelled from Texas to Michigan every year from 2022 through 2024.

87. Each year, the Working Plaintiffs' sole purpose in traveling to Michigan was to work for Defendant Brookside.

88. Each year, the Working Plaintiffs incurred transportation and subsistence costs to travel from Texas to Michigan to work for Defendants. For example, the Working Plaintiffs incurred expenses for gas and food.

89. Each of the Working Plaintiffs incurred similar expenses each year they traveled from Texas to work for Brookside.

90. Each year, these expenses were incurred for the benefit and convenience of Defendant Brookside.

91. Each year, Working Plaintiffs were not completely reimbursed for their transportation costs within the first pay period working at Defendant Brookside.

92. Each year Defendant Brookside's failure to reimburse Working Plaintiffs for travel expenses in their first paycheck resulted in a *de facto* deduction from their paycheck in their first week

93. Each year, this *def facto* deduction, made for the benefit and convenience of Defendant Brookside resulted in Working Plaintiffs being paid at a rate below the applicable minimum wage.

94. Brookside would sometimes, but not every year, pay the Working Plaintiffs a bonus of $200 for their transportation expenses at the end of the employment period in September.

95. The Whittle Plaintiffs received a $200 bonus in September of 2023.

96. Between 2019 to 2024, the Serrano Plaintiffs were paid a bonus of $200 for their transportation expenses at least once by the Defendants.

97. These bonuses were not adequate to completely reimburse the expenses the Working Plaintiffs incurred in traveling to Michigan to work for Defendant Brookside.

98. Brookside's failure to fully reimburse Working Plaintiffs for travel expenses in their first paychecks resulted in a *de facto* deduction in the amount of the expenses from their pay for their first work week.

Serrano Plaintiffs' 2019 to 2021 Season, Rate of Pay, and Job Duties

99. In 2019, 2020, and 2021, the Serrano Plaintiffs arrived at Brookside to work in packing and sorting blueberries for Brookside at their Gobles location on or around mid-June.

100.    At least once during this period, the Serrano Plaintiffs were not given work until on or around July 4, despite arriving in mid-June.

101.    The Serrano Plaintiffs worked seven days a week for Defendant Brookside between the 2019-2023 seasons, hand harvesting, planting, weeding, pruning, caring, cleaning, and packing blueberries.

102.    In 2019, the Serrano Plaintiffs were paid an hourly rate of $9.45 and, during weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $14.18 per hour for hours worked beyond the first 40 hours of work.

103.    In 2020, the Serrano Plaintiffs were paid an hourly rate of $9.65 and, during the weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $14.48 per hour for hours worked beyond the first 40 hours of work.

104.    In 2021, the Serrano Plaintiffs were paid an hourly rate of $9.65 and, during the weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $14.48 per hour for hours worked beyond the first 40 hours of work.

105.    In 2022, the Working Plaintiffs were paid an hourly rate of $9.87 and, during the weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $14.81 per hour for hours worked beyond the first 40 hours of work.

106.    In 2023, the Working Plaintiffs were paid an hourly rate of $10.10 and, during the weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $15.15 per hour for hours worked beyond the first 40 hours of work.

107.    In 2024, the Whittle Plaintiffs and Horacio Serrano were paid an hourly rate of $10.33 and, during the weeks they worked packing blueberries in the packing warehouse, they were paid an overtime rate of $15.50 for hours worked beyond the first 40 hours of work.

108.    Working Plaintiffs were not paid overtime in workweeks in which they only worked in the field or in the greenhouse harvesting blueberries for Defendant Brookside.

109.    Each year at Brookside, the Working Plaintiffs' direct supervisors were Defendant Josh Fritz and Ramirez.

110.    Each year at Brookside, Defendants would have the Serrano Plaintiffs additionally work in the greenhouses, nursery, outside in the field, in packing and sorting blueberries, and in operating equipment in the warehouse.

111.    Defendants would generally have the Serrano Plaintiffs harvest blueberries until early July, before working inside operating equipment and packing from July to mid-August and again be tasked with harvesting blueberries from late-August to mid-September.

112.    Between 2019 to 2021, there was no water available to the Serrano Plaintiffs and other migrant agricultural workers while working inside the Brookside greenhouse and on the field.

Working Plaintiffs' 2022 to 2024 Season, Rate of Pay, and Job Duties

113.    The Working Plaintiffs were promised by Defendant William Fritz and Brookside agents that their job duties were to pack and sort blueberries and operate equipment in the warehouse at Brookside's Gobles location.

114.    In 2022 and 2023, the Working Plaintiffs arrived at Brookside in mid-June to pack and sort blueberries for Brookside at their Gobles location on or around mid-June.

115.    In 2022 and 2023, the Working Plaintiffs worked at Brookside from mid-June until mid-September.

116.    Relying on their conversations with both Defendants William Fritz and Josh Fritz on June 14, 2024, the Whittle Plaintiffs arrived to Gobles, Michigan to work in packing and sorting blueberries for Defendant Brookside at their Gobles location on or around June 18, 2024.

117.    The Whittle Plaintiffs were not given work by Defendants or agents of Defendant Brookside until on or around June 28, 2024.

118.    After the Whittle Plaintiffs arrived in Michigan but before they were assigned work for the 2024 season, the Whittle Plaintiffs witnessed H-2A workers being transported to and from Brookside in a bus.

119.    On information and belief, H-2A workers were provided work at Brookside between June 18 to 28 while the Whittle Plaintiffs and other U.S. workers who were ready and available to work were not offered work.

120.    On or around noon on Saturday, June 28, 2024, Defendant Josh Fritz visited F-camp to ask the Serrano-Whittles to come into work.

121.    Jesse Serrano began work at Brookside on June 28, 2024 and Celeste Whittle began work at Brookside on July 1, 2024 after arranging childcare for the Non-Working Minor Plaintiffs.

122.    In 2024, Horacio Serrano, alongside his family members, began work at Brookside on or around July 7, 2024 after arriving in Michigan on or around July 4, 2024.

123.    In 2022, the Working Plaintiffs were paid $9.87 per hour for the first 40 hours of work and were paid an overtime rate of $14.81 per hour during weeks they worked packing blueberries in the packing warehouse.

124.    In 2023, the Working Plaintiffs were paid $10.10 per hour for the first 40 hours of work and were paid an overtime rate of $15.15 per hour during weeks they worked packing blueberries in the packing warehouse.

125.    In 2024, the Whittle Plaintiffs and Horacio Serrano were paid $10.33 per hour for the first 40 hours of work and were paid an overtime rate of $15.50 per hour during weeks they worked packing blueberries in the packing warehouse.

126.    Between 2022 to 2024, other Brookside employees from the U.S. who worked alongside the Working Plaintiffs were paid the same pay rate as Plaintiffs.

127.    Each year working for Defendant Brookside, the Working Plaintiffs' direct supervisors were Josh Fritz and Ramirez.

128.    At Brookside in 2022-2024, the Working Plaintiffs harvested, planted, pruned, weeded, packed and sorted blueberries, and operated equipment in the packing warehouse.

129.     From 2022 –2024, the Working Plaintiffs would generally do work associated with harvesting blueberries from mid-June to early July, then were tasked with working

inside the Brookside warehouse operating equipment and packing from on or around July 4 to mid-August. From mid-August to mid-September, the Working Plaintiffs were again tasked with harvesting blueberries.

130.     The Working Plaintiffs were additionally tasked with working in Defendant Brookside's greenhouse harvesting blueberries periodically in July and August.

131.     The Working Plaintiffs had no access to water while working inside the Brookside greenhouse or fields in 2022, 2023, and 2024.

132.     Celeste Whittle requested water from Ramirez after working in the greenhouse in August of 2022. When she did so, she was informed by Ramirez that he did not know where the water was.

133.     In 2022, 2023, and 2024, the Working Plaintiffs were informed by Defendant Brookside agents that they were not being tasked with picking blueberries as those tasks were assigned to the "pickers."

134.     Based on information and belief, the "pickers" were H-2A visa holders.

135.     Nearly every day during this time period, the Whittle Plaintiffs saw buses from other Defendant Brookside-owned camps filled with H-2A workers being driven to Defendant Brookside's Gobles location.

136.     On information and belief, the bus transported H-2A workers, as the Working Plaintiffs and other U.S. agricultural workers drove themselves to work at Defendant Brookside.

137.     The H-2A workers were hired by Margarito Hernandez in 2022 to 2024, through his company MH Harvesting, Eduardo Hernandez in 2022-2024, through his company Hernandez Harvesting, and Luis Botello in 2022 and 2023, through his company Prime Workforce, LLC (hereinafter the "Farm Labor Contractors" or "the FLCs").

138.    In the H-2A program, the document containing the material terms and conditions of employment for H-2A workers and workers in corresponding employment is called "job order". 20 C.F.R. §655.103.

139.    Based on information listed on each FLC's job orders for 2022, 2023, and 2024, the H-2A worker's job duties included "Blueberry Harvest by hand, plant, weed, prune, care, cleaning, and equipment operations in blueberry farm."

140.    Defendant Brookside owns the property located at:

    a.  17125 36th Street, Gobles Michigan, 49055;

    b.  9846 37th Street, Gobles Michigan, 49055;

    c.  37988 CR 388 Gobles, Michigan, 49055;

    d.  37946 CR 388 Gobles, Michigan 49055.

141.    H-2A workers worked for Defendant Brookside at worksites including, inter alia:

    a.  17125 36th Street, Gobles Michigan, 49055;

    b.  9846 37th Street, Gobles Michigan, 49055;

    c.  37988 CR 388 Gobles, Michigan, 49055;

    d.  37946 CR 388 Gobles, Michigan 49055.

142.    The H-2A job orders at Defendant Brookside for the 2022-2024 seasons include the following terms and conditions, *inter alia*:

    a.  A minimum hourly wage of at least the Michigan AEWR, which was $15.37 per hour in 2022, $17.34 per hour in 2023, and $18.50 in 2024;

    b.  Employer-provided housing compliant with applicable housing health and safety standards;

    c.  Employer-provided cooking and kitchen facilities, utilities, and utensils at no cost to workers;

    d.  Employer-provided daily transportation via charter buses or vans to and from the worksite.

    e.  The employer must reimburse workers for costs of inbound transportation to the place of employment from the place from which the worker came at the beginning of the contract period.

    f.  The employer must reimburse workers for costs of outbound transportation from the place of employment to the place from which the worker came from at the completion of the work contract.

143.    The terms and conditions included in the job orders are required by federal law and explicitly become the terms and conditions of employment for H-2A workers and workers in corresponding employment.

144.    Thus, the benefits owed under the job orders constituted terms of the Working Plaintiffs' working arrangement with Defendants.

145.    The Working Plaintiffs worked alongside other U.S. workers from the Rio Grande Valley in Texas, South Carolina, and Florida in packing and were grouped together when tasked with general farm labor harvesting blueberries.

146.    The Working Plaintiffs and other US workers worked in harvesting blueberries by hand, planting, weeding, pruning, caring for plants, cleaning, and operating equipment.

147.    On information and belief, Defendants William Fritz or Josh Fritz would direct Jose Ramirez to bring in "workers from the field" into the packing facility to assist in packing operations.

148.    Based on information and belief, Ramirez would bring in H-2A workers in the packing facility to assist the Working Plaintiffs and other migrant agricultural workers in

packing and equipment operation in 2022, 2023, and 2024 because more workers were needed in packing.

149.    When Defendant Josh Fritz directed the H-2A workers to work in Defendant Brookside's packing shed, the H-2A workers performed the same tasks performed by Working Plaintiffs and other similarly-situated U.S. workers: operating equipment and packing blueberries grown by Defendant Brookside and other growers.

150.    To track their hours in the packing shed, the Working Plaintiffs were provided with badges by Defendant Brookside.

151.    The Working Plaintiffs would clock themselves in and out of their shifts at Defendant Brookside's packing shed to log their hours.

152.    When the H-2A workers worked in Brookside's packing shed, they also logged their hours by using badges to clock in and out at the same time clock provided by Brookside.

153.    When the Working Plaintiffs were tasked with harvesting blueberries in the greenhouse and in the field at Brookside, they would log their hours on timecards provided by Brookside Farms.

154.    When the H-2A workers were tasked with harvesting blueberries for Brookside, they also logged their hours on timecards.

155.    On information and belief, the timecards the H-2A workers used were provided by Defendants.

156.    Brookside's timekeeping system kept track of employees using an individual identifier and a pay rate.

157.    In at least 2023, Brookside's timekeeping system included the H-2A pay rate, which was $17.34 per hour in 2023.

158.    In 2023, Celeste Whittle asked Bernie Fritz, who she believed was Defendant Brookside's HR Director, why the pay rate of $17.34 was in Brookside's timekeeping system.

159.    When Celeste Whittle asked Bernie Fritz about the difference in payrate, Bernie Fritz told Whittle not to worry about the discrepancy in pay rates.

160.    In 2023, Horacio Serrano attempted to get water and ice from a cooler while working in Defendant Brookside's greenhouse. He was informed by Bernie Fritz that the water was only for the H-2A workers.

161.    In September of 2022 and 2023, Defendants asked Esperanza Serrano, Celeste Whittle, and other female employees from the U.S. to clean Defendant Brookside's labor housing units, including camps and units occupied by H-2A workers.

162.    On several occasions in 2023, Celeste Whittle requested agents of Defendant Brookside, including Bernie Fritz, Emily Fritz, and Carly Jo Parsley, to provide her with a complaint form so that she could formally complain about the working conditions at Brookside.

163.    The agents of Defendant Brookside told Ms. Whittle that she would be provided with a complaint form, but she was never given one.

164.    In 2023, Esperanza Serrano submitted a complaint about her working conditions to Brookside's "complaint box".

165.    Brookside did not respond to Esperanza Serrano's 2023 complaint about her working conditions.

166.    Celeste Whittle filed a complaint with Brookside's Human Resources Department against Jose Ramirez on or around July 26, 2024.

167.    Celeste Whittle messaged Defendant Josh Fritz about mistreatment by Jose Ramirez and another employee at Brookside on or around July 28, 2024.

168.    Defendants fired the Whittle Plaintiffs on July 29, 2024.

169.    Defendants fired Horacio Serrano on or around August 30, 2024.

2024 Firing of the Whittle Plaintiffs

170.    After arriving on or around June 18, 2024, Jesse Serrano began working for Defendant Brookside on or around June 28, 2024 while Celeste Whittle began working for Defendant Brookside on or around July 1, 2024.

171.    While Celeste Whittle was working for in the packing warehouse, Ramirez threw wooden pallets at her and dropped a wooden pallet on her foot.

172.    Celeste Whittle asked Defendant Brookside's HR personnel for an HR complaint form on or around July 16, 2024 regarding her treatment by Ramirez.

173.    She was not provided with a complaint form.

174.    Between July 17 and July 22, Celeste Whittle spoke with Defendant Josh Fritz about Ramirez's conduct and her concern that HR was not taking her verbal complaints seriously.

175.    In that conversation, Celeste Whittle informed Defendant Josh Fritz that she planned to take legal action and speak with an attorney.

176.    On or about Monday, July 22, 2024, Celeste spoke with Defendant Josh Fritz again and explained her frustrations about the working environment.

177.    On or about Friday, July 26, 2024, Celeste Whittle received a complaint form from HR and submitted an HR complaint that day.

178.    On or about July 28, 2024, Celeste Whittle texted Defendant Josh Fritz that a coworker who was associated with Ramirez had been aggressive with her.

179.    That day, Josh Fritz called her back and told her, "I don't know what to tell you" about Ramirez's mistreatment.

180.    During that conversation, Celeste Whittle again informed Defendant Josh Fritz that she was going to speak to an attorney about her experiences at Brookside.

181.    On Monday, July 29, 2024, the same coworker again began to speak to Celeste Whittle aggressively.

182.    In response, Celeste Whittle went to the Brookside Human Resources office to request a complaint form, where she was informed one would be provided to her.

183.    Later that day, Defendants Josh Fritz and William Fritz asked the Whittle Plaintiffs to come outside the packing warehouse to discuss her complaint.

184.    In this conversation, Defendant Josh Fritz asked why Celeste Whittle had an "attitude." She attempted to inform him of her concerns regarding her working conditions in the packing warehouse.

185.    In this conversation, Celeste Whittle asked Defendant Josh Fritz why he was not addressing her concerns.

186.    In the same conversation, Jesse Serrano informed Defendants William Fritz and Josh Fritz that workers in other housing camps received more hours than he and Celeste Whittle received.

187.    Mr. Serrano also informed Defendants that he and Ms. Whittle both witnessed workers in other housing camps getting work between June 18 to June 28 while the Serrano-Whittles were not offered work.

188.    Defendants Josh Fritz and William Fritz then terminated the Whittle Plaintiffs and informed them that they were required to leave their housing.

189.     Defendant William Fritz informed the Whittle Plaintiffs that they were being terminated because they created unnecessary conflicts in Brookside's packing warehouse.

190.     Defendants terminated the Whittle Plaintiffs in retaliation for voicing concerns about their wages and working conditions.

2024 Termination of Horacio Serrano

191.     On or around August 17, 2024, Peter Fritz, another manager for Defendant Brookside, demanded that Horacio Serrano sign a document which stated that Horacio Serrano had been trained to operate equipment.

192.     When Horacio Serrano asked about the purpose of the document, Peter Fritz told him that it was because DefendantBrookside was going to have an audit the next day.

193.     Horacio Serrano had never been trained to operate equipment at Brookside.

194.     Horacio Serrano told Peter Fritz that he would tell the auditor the truth: that he had never been trained to operate equipment at Brookside.

195.     In response, Peter Fritz called Horacio Serrano "an asshole."

196.     Horacio Serrano then signed the document out of concern that he would lose his job if he did not.

197.     On or around August 18, 2024, an investigator from USDOL came to speak with workers at Brookside's packing shed.

198.     The USDOL investigator interviewed Horacio Serrano, his relatives, and other Brookside employees in groups.

199.     Horacio Serrano was placed in a group of workers alongside Ramirez's son, who also worked at Brookside.

200.     Horacio Serrano informed the investigator about his experience working at Brookside and voiced several concerns regarding workplace safety and other working conditions.

201.     On or around August 30, 2024, Defendant William Fritz and Defendant Josh Fritz fired Horacio Serrano and his family members.

202.     Defendants terminated Horacio Serrano in retaliation for speaking about his concerns regarding his wages and working conditions.

Defendants failed to pay Working Plaintiffs and similarly-situated workers the rate owed to workers who work alongisde H-2A workers

203.     Defendants knew that their agents had recruited H-2A workers.

204.     On information and belief, Defendants had the power to fire or dismiss H-2A workers.

205.     Beginning at least in June of 2022, Defendants supervised the H-2A workers while they worked in Brookside's blueberry fields and its packing shed.

206.     Beginning at least in June of 2022, Defendants controlled the work schedules of the H-2A workers.

207.     On several occasions, Defendants provided work to H-2A workers while Plaintiffs and other U.S. workers sat in Brookside-provided housing and were not offered work.

208.     On several occasions each year from 2022 to 2024, Defendants ordered H-2A workers to work in Brookside's packing shed alongside Plaintiffs and other U.S. workers.

209.     Beginning at least in June of 2022, Defendants controlled the conditions of employment for H-2A workers.

210.    Between 2022 and 2024, Defendants assigned work to the H-2A workers based on Brookside's day-to-day needs.

211.    Between 2022 and 2024, Brookside Farms owned and controlled the following housing that was licensed for use for the H-2A workers by Michigan Department of Agriculture and Rural Development (MDARD):

   a.  F-Camp: 37946 CR 388 Gobles, Michigan 49055;

   b.  S Camp or also known as A&B Camp: 37936 CR 388 Gobles, Michigan 48055;

   c.  T-Camp: 37522 CR 388 Gobles, Michigan 49055;

   d.  D-Camp: 37221 12th Avenue, Gobles, MI 49055;

   e.  M-Camp: 14525 3950th Street, Bloomingdale, MI 49026;

   f.  J-Camp: 37347 CR 388, Gobles, MI 49055

   g.  Brookside Farms Camp: 36864 CR 388, Gobles, MI 49055.

212.    Between 2022 and 2024, Defendant Brookside Farms assigned Plaintiffs Celeste Whittle and Esperanza Serrano to clean the housing occupied by the H-2A workers.

213.    On information and belief, between 2022 and 2024 Defendants maintained employment records for the H-2A workers.

214.    Between 2022 and 2024, the H-2A workers clocked in for work in Defendant Brookside's packing shed using time clocks owned and controlled by Defendants.

215.    On information and belief, between 2022 and 2024, Defendants' timekeeping system kept employment records which included at least the H-2A workers' hours of work, rates of pay, and some unique identifier such as a name or employee ID number.

216.    Between 2022 and 2024, Defendants provided tools and equipment for the H-2A workers.

217.    Between 2022 and 2024, the H-2A workers worked on properties owned and controlled by Defendants.

218.    Between 2022 and 2024, Defendants provided housing to the H-2A workers free of charge.

219.    Between 2022 and 2024, Defendants assigned H-2A workers to work in blueberry processing in their packing shed alongside the Working Plaintiffs.

220.    Between 2022 and 2024, when the Working Plaintiffs worked for Defendants harvesting blueberries, they worked alongside H-2A workers.

221.    In each workweek from 2022 to 2024 that the Working Plaintiffs packed or processed blueberries for Defendants, the Working Plaintiffs packed or processed blueberries that were not grown at Brookside Farms.

222.    Defendants regularly pack and process blueberries which are not grown at Brookside Farms.

223.    In each workweek from 2022 to 2024 in which they worked in Defendants' packing shed, the Working Plaintiffs worked alongside H-2A workers.

224.    In each workweek from 2022 to 2024, the Working Plaintiffs worked alongside other Legal Permanent Residents and U.S. citizens who performed similar tasks.

225.    In each workweek from 2022 to 2024, the Working Plaintiffs and other U.S. workers performing similar work in Defendant Brookside's packing shed were paid less than the applicable AEWR as their regular rate of pay.

226.    In each workweek from 2022 to 2024 in which Working Plaintiffs worked overtime, the Working Plaintiffs and other U.S. workers in Defendants' packing shed were paid less than 1.5 times the AEWR for each overtime hour that they worked.

227.    From at least 2022 to 2024, Defendants had a policy of paying only the Michigan Minimum Wage to packing shed workers who were U.S. workers and legal permanent residents.

<u>2019 to 2024 Housing Issues for the Serrano Plaintiffs</u>

228.    Upon the Serrano Plaintiffs' arrival in Michigan each year from 2019-2023, and Horacio Serrano's arrival in 2024, Brookside, its agents, and Defendant William Fritz assigned them to a housing unit located at F-camp owned by Defendant Brookside.

229.    From 2022 to 2024, F-camp was inspected for H-2A housing by the Michigan Department of Agriculture and Rural Development (henceforth MDARD).

230.    Each year, Horacio Serrano called Defendant William Fritz before they arrived in Michigan, and Defendant William Fritz confirmed to Horacio Serrano that the housing was ready and clean.

231.    Each year while living at F-camp, the Serrano Plaintiffs found that the water was yellow and undrinkable. As a result, they had to buy bottled water to drink and cook.

232.    After moving to F-camp and while living and working at Brookside each year, the Serrano Plaintiffs would get bumps on their hands and experience hair loss.

233.    Each year while living at F-camp, the Serrano Plaintiffs found bed bugs and mold on their mattresses.

234.    The Serrano Plaintiffs would report the housing issues to Bernie Fritz, Defendant Josh Fritz, or Defendant William Fritz and would request new beds.

235.    The Serrano Plaintiffs never received new or replacement beds or mattresses while living at F-camp.

236.    The Serrano Plaintiffs regularly found bees, spiders, and other bugs in the housing when they lived at F-camp.

237.    As a result, Horacio Serrano bought insulation and bug spray to insulate the windows and protect the housing from bugs.

238.    While living at the F-Camp, the only toilets available to the Serrano Plaintiffs were two outhouses at F-camp.

239.    The Serrano Plaintiffs regularly found snakes, racoons, and skunks in the outhouses.

240.    The Serrano Plaintiffs reported the conditions of the outhouses to Bernie Fritz and Defendant Josh Fritz between 2019 to 2024.

241.    Defendant Josh Fritz and Bernie Fritz dismissed the Serrano Plaintiffs concerns about their housing.

242.    The Serrano Plaintiffs continued to regularly see animals in the outhouses while they lived at F-camp from 2019 to 2024.

243.    The Serrano Plaintiffs shared the camp location and outhouses with their children, Whittle Plaintiffs, Minor Child Plaintiffs, and other U.S. migrant agriculture workers from Weslaco, Texas.

244.    H-2A workers were not housed at F-camp.

245.    The housing in F-camp was inadequate and did not meet federal and state housing standards between 2019 to 2024, in that:

    a.    The housing unit contained mold (in violation of 29 USC § 1910.142(b)(1));

    b.    The housing unit in 2023 did not contain laundry facilities, bedding, and furniture (in violation of 29 USC §1910.142(b)(3) and (f)(1)(iii));

    c.    The housing contained insects, including wasps (in violation of 29 USC § 1910.142(j)), and;

    d.    The housing unit did not contain a fire extinguisher.

246.    From 2020-2024, Defendant Brookside did not post updated certificates of compliance with federal and state health and safety standards or updated licenses from MDARD at F-camp. 29 U.S.C. §1823(b)(1) for F-Camp.

2022-2024 Housing Issues for Whittle Plaintiffs

247.    Upon the Whittle Plaintiffs' and the Minor Child Plaintiffs' arrival in Michigan in 2022, Defendants Brookside and William Fritz assigned them to a housing unit known as S-camp according to inspectors from MDARD, located at 37936 CR 388, Gobles, MI 49055, owned by Defendant Brookside.

248.    The Whittle Plaintiffs believed the camp was called A&B Camp.

249.    S-Camp was inspected by MDARD in 2022, 2023, and 2024 as H-2A housing.

250.    In 2022, Defendant Brookside did not post updated certificates of compliance with federal and state health and safety standards or updated licenses from MDARD at S-camp. 29 U.S.C. §1823(b)(1).

251.    S Camp was inadequate and did not meet federal and state housing standards, in that

    a.    The housing unit contained mold (in violation of 29 USC § 1910.142(b)(1));

    b.    The housing unit did not contain a fire extinguisher;

    c.    The house had undrinkable water (in violation of 29 USC § 1910.142(c)(1);

    d.    The house had rodents (in violation of 29 USC § 1910.142(j)), and

    e.    The house did not have screens on the windows (in violation of 29 USC § 1910.142(b)(8)).

252.    Upon the Whittle Plaintiffs' and Minor Child Plaintiffs' arrival in Michigan in 2023 and 2024, Defendant Brookside and Defendant William Fritz assigned them to a housing unit located at F-camp, owned by Defendant Brookside.

253.        In 2023 and 2024, F-camp was licensed and inspected by MDARD for H-2A housing.

254.        Upon the Whittle Plaintiffs arrival in Michigan in 2023 and 2024, Brookside and Defendant William Fritz assigned them to a housing unit located at F-camp, owned by Brookside and Defendant William Fritz.

255.        The housing in F-camp was inadequate and did not meet federal and state housing standards, in that

    a.   The housing unit contained mold (in violation of 29 USC § 1910.142(b)(1));

    b.   The housing unit in 2023 did not contain laundry facilities, bedding, and furniture (in violation of 29 USC §1910.142(b)(3) and (f)(1)(iii));

    c.   The housing contained insects, including wasps (in violation of 29 USC § 1910.142(j));

    d.   The housing unit did not contain a fire extinguisher.

256.        From 2022-2024, Defendant Brookside did not post updated certificates of compliance with federal and state health and safety standards or updated licenses from MDARD at F-Camp. 29 U.S.C. §1823(b)(1).

<u>Collective Action Allegations</u>

257.        All claims set forth in Count 3 are brought by Working Plaintiffs individually on behalf of themselves and by Working Plaintiffs on behalf of all other similarly situated persons pursuant to 29 U.S.C. § 216(b). These similarly-situated individuals consist of all U.S. workers (as that term is defined at 20 C.F.R. § 655.103) who worked more than 40 hours in at least one workweek in which they were employed by Defendants to perform any job task listed in an H-2A clearance order which authorized work on Brookside

Farms, or any job task actually performed by any H-2A worker at Brookside Farms, from June 26, 2022 to present.

258.     Because Working Plaintiffs and other similarly situated workers were in "corresponding employment" with H-2A workers, their regular rate of pay should have been the rate of pay for the H-2A workers at Brookside, which was the Michigan AEWR.

259.     Defendants failed to pay Working Plaintiffs and other similarly situated workers the AEWR.

260.     Defendants failed to pay Working Plaintiffs and other similarly-situated workers an overtime premium using the AEWR as their regular rate of pay.

261.     Pursuant to Section 16b of the FLSA, 29 U.S.C. § 216(b), Working Plaintiffs bring these claims on behalf of similarly situated workers employed by Brookside from 2022-present. The named Working Plaintiffs have consented to be party plaintiffs in this FLSA action and copies of their signed FLSA consent forms are attached hereto as Exhibit 1.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION: MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT (AWPA) (Against all Defendants)

262.     The Working Plaintiffs and Minor Child Plaintiffs incorporate and re-allege all above stated paragraphs of this complaint as fully set forth herein.

263.     All Defendants intentionally violated the Serrano Plaintiffs' rights under the AWPA from 2019 to 2023 by:

a.  failing to disclose to the Serrano Plaintiffs at the time of recruitment, in writing, the terms and conditions of employment, in violation of 29 U.S.C. §1821(a) and (g);

b.  failing to post in a conspicuous place at its place of employment a poster provided by the U.S. Secretary of Labor setting forth the rights and protections afforded to migrant agricultural workers under the AWPA, in violation of 29 U.S.C. § 1821(b);

c.  For 2022 and 2023, failing to pay Serrano Plaintiffs the wages owed when due, in violation of 29 U.S.C. § 1822(a);

d.  failing to ensure that the housing provided to Plaintiffs complied with applicable substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a);

e.  failing to post certification from an appropriate authority that the housing provided to the Serrano Plaintiffs complied with applicable substantive federal and state health and safety standards before any migrant farmworkers occupied it, in violation of 29 U.S.C. § 1823(b)(1);

f.  Failing to post in a conspicuous place or present a statement of terms and conditions of occupancy of the housing, as required by 29 U.S.C. §1821(c);

g.  knowingly providing false and misleading information to the Serrano Plaintiffs regarding the terms and conditions of agricultural employment, in violation of 29 U.S.C. § 1821(f); and

h.  violating without justification the terms of the working arrangement made with Serrano Plaintiffs, in violation of 29 U.S.C. § 1822(c).

264.    All Defendants intentionally violated all the Whittle Plaintiffs' rights under the

AWPA from 2022 to 2024 by:

i.   failing to disclose to the Whittle Plaintiffs at the time of recruitment, in writing,

the terms and conditions of employment, in violation of 29 U.S.C. §1821(a) and

(g);

j.   failing to post in a conspicuous place at its place of employment a poster provided

by the U.S. Secretary of Labor setting forth the rights and protections afforded to

migrant agricultural workers under the AWPA, in violation of 29 U.S.C. §

1821(b);

k.   Failing to pay the Whittle Plaintiffs their wages owed when due, in violation of 29

U.S.C. 1822(a);

l.   failing to ensure that the housing provided to the Whittle Plaintiffs complied with

applicable substantive federal and state health and safety standards, in violation of

29 U.S.C. § 1823(a), 29 USC § 1910.142(b)(1)), 29 USC § 1910.142(c)(1), 29

USC § 1910.142(j)), 29 USC § 1910.142(b)(8)), and 29 USC §1910.142(b)(3) and

(f)(1)(iii));

m.   failing to post certification from an appropriate authority that the housing

provided to the Whittle Plaintiffs complied with applicable substantive federal

and state health and safety standards before any migrant farmworkers occupied it,

in violation of 29 U.S.C. § 1823(b)(1);

n.   failing to post in a conspicuous place or present a statement of terms and

conditions of occupancy of the housing, as required by 29 U.S.C. §1821(c);

o.  knowingly providing false and misleading information to the Whittle Plaintiffs the terms and conditions of agricultural employment, in violation of 29 U.S.C. § 1821(f);

p.  violating without justification the terms of the working arrangement made with Whittle Plaintiffs, in violation of 29 U.S.C. § 1822(c); and,

q.  For 2024, discriminating against and discharging the Whittle Plaintiffs because of their exercise of the rights afforded to them by the AWPA, in violation of 28 U.S.C. § 1855(a).

265.    All Defendants intentionally violated Horacio Serrano's rights under the AWPA in 2024 by:

r.  failing to disclose to Horacio Serrano at the time of recruitment, in writing, the terms and conditions of employment, in violation of 29 U.S.C. §1821(a) and (g);

s.  failing to post in a conspicuous place at its place of employment a poster provided by the U.S. Secretary of Labor setting forth the rights and protections afforded to migrant agricultural workers under the AWPA, in violation of 29 U.S.C. § 1821(b);

t.  Failing to pay Horacio Serrano his wages owed when due, in violation of 29 U.S.C. § 1822(a);

u.  failing to ensure that the housing provided to Horacio Serrano complied with applicable substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a);

v.  failing to post certification from an appropriate authority that the housing provided to Horacio Serrano complied with applicable substantive federal and

state health and safety standards before any migrant farmworkers occupied it, in violation of 29 U.S.C. § 1823(b)(1);

w.  failing to post in a conspicuous place or present a statement of terms and conditions of occupancy of the housing, as required by 29 U.S.C. §1821(c)

x.  knowingly providing false and misleading information to Horacio Serrano the terms and conditions of agricultural employment, in violation of 29 U.S.C. § 1821(f);

y.  Failing to pay Mr. Serrano his wages owed when due, in violation of 29 U.S.C. 1822(a);

z.  violating without justification the terms of the working arrangement made with Horacio Serrano, in violation of 29 U.S.C. § 1822(c); and

aa. discriminating against and discharging Horacio Serrano because of his exercise of the rights afforded to him by the AWPA, in violation of 28 U.S.C. § 1855(a).

266.    All Defendants intentionally violated all the Minor Child Plaintiffs' rights under the AWPA from 2022 to 2024 by failing to ensure that the housing provided to the Whittle Plaintiffs complied with applicable substantive federal and state health and safety standards, in violation of 29 U.S.C. § 1823(a), 29 USC § 1910.142(b)(1)), 29 USC § 1910.142(c)(1), 29 USC § 1910.142(j), 29 USC § 1910.142(b)(8), and 29 USC §1910.142(b)(3) and (f)(1)(iii)).

267.    Defendants' violations of the AWPA caused Plaintiffs to suffer damages.

268.    Defendants are liable jointly and severally to Plaintiffs under the AWPA for each Plaintiff's actual damages, or in the alternative for statutory damages of up to $500 per Plaintiff per violation of AWPA, whichever is greater, pursuant to 29 U.S.C. § 1854.

**SECOND CAUSE OF ACTION: WORKFORCE OPPORTUNITY WAGE ACT (WOWA) / IMPROVED WORKFORCE OPPORTUNITY WAGE ACT (IWOWA) (Against all Defendants)**

261.     Working Plaintiffs reallage and incorporate by reference the allegations set forth above.

262.     In 2022, Working Plaintiffs were paid under the state minimum wage in a pay period or pay periods when they incurred travel expenses, including transportation and subsistence costs, for the benefit and convenience of Defendant Brookside, and were not fully reimbursed for these costs.

263.     In 2023, Working Plaintiffs were paid under the state minimum wage in a pay period or pay periods when they incurred travel expenses, including transportation and subsistence costs, for the benefit and convenience of Defendant Brookside, and were not fully reimbursed for these costs.

264.     In 2024, Whittle Plaintiffs and Horacio Serrano were paid under the state minimum wage in a pay period or pay periods when they incurred travel expenses, including transportation and subsistence costs, for the benefit and convenience of Defendant Brookside, and were not fully reimbursed for these costs.

265.     Working Plaintiffs suffered injury as a result of these violations and are entitled to their unpaid minimum wages, and an equal additional amount in liquidated damages, plus attorney's fees pursuant to M.C.L. § 408.419 and M.C.L. § 408.939.

**THIRD CAUSE OF ACTION: FAIR LABOR STANDARDS ACT (FLSA) (against all Defendants)**

266.     The Working Plaintiffs reallege and incorporate by reference the allegations set forth above.

267.     Plaintiffs bring this count on behalf of themselves individually and on behalf of others similarly situated pursuant to 29 U.S.C. § 216(b).

268.     From 2022-2024, Defendants violated the overtime wage provisions of the FLSA, 29 U.S.C. § 207(a), by failing to pay the Working Plaintiffs and other similarly-situated workers at least 1.5 times their legally-authorized regular rate of pay for the workweeks in which they worked in excess of 40 hours in Defendants' packing shed.

269.     Defendants' violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of 28 U.S.C. § 255(a). Defendants showed reckless disregard as to whether their failure to pay overtime wages was prohibited by the FLSA. Although Defendants were on notice that workers in corresponding employment with H-2A workers were required to be paid at least the same wages as the H-2A workers, Defendants maintained a policy of paying their U.S. workers only the Michigan minimum wage.

270.     Plaintiffs and others similarly situated are each entitled to recover their unpaid overtime wages, plus an additional equal amount in liquidated damages, and attorney's fees and costs in accordance with 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

Wherefore, the Plaintiffs respectfully request that this Court grant them the following relief:

a.   Enter declaratory judgment that the Defendants intentionally violated the Plaintiffs' rights under the AWPA as set forth in the preceding paragraphs;

b.   Award each Plaintiff the greater of their statutory damages or, in the alternative, actual damages for the Defendants' violations of the AWPA;

c.  Enter an injunction requiring the Defendants to comply with the AWPA;

d.  Enter declaratory judgment that Defendants willfully violated the rights of the Working Plaintiffs under the FLSA as set forth in the preceding paragraphs;

e.  Enter declaratory judgment that Defendants willfully violated the rights of the Working Plaintiffs under IWOWA/WOWA as set forth in proceedings paragraphs;

f.  Award Working Plaintiffs their unpaid minimum wages and unpaid overtime wages, plus an additional equal amount as liquidated damages, and their attorneys' fees and costs for Defendant Brookside's and Defendant William Fritz's violations of the FLSA and IWOWA/WOWA;

g.  Award similarly situated employees described in Count 3 who timely opt in the amount of FLSA unpaid overtime wages due to them, as well as an equal amount of liquidated damages and their attorney's fees and costs;

h.  Award the Plaintiffs pre-judgment and post-judgment interest, as allowed by law and

i.  Award the Plaintiffs all other relief to which they may be justly entitled.

Dated: June 26, 2025                          Respectfully submitted,

                                             /s/ Ilina Krishen
                                             Ilina Krishen
                                             FARMWORKER LEGAL SERVICES,
                                             A Division of Michigan Advocacy Program
                                             350 E Michigan Ave, Suite 310
                                             Kalamazoo MI 49007
                                             Tel.: (269) 492-7190
                                             Email: ikrishen@farmworkerlaw.org
                                             Attorney for Plaintiffs

                                             /s/ Kara Moberg

Kara K. Moberg
FARMWORKER LEGAL SERVICES,
A Division of Michigan Advocacy Program
350 E Michigan Ave, Suite 310
Kalamazoo MI 49007
Tel.: (269) 492-7190
Email: kmoberg@farmworkerlaw.org
*Attorney for Plaintiffs*

*/s/ Melissa Moeinvaziri*
Melissa Moeinvaziri
FARMWORKER LEGAL SERVICES,
A Division of Michigan Advocacy Program
350 E Michigan Ave, Suite 310
Kalamazoo MI 49007
Tel.: (269) 492-7190
Email: mmoeinvaziri@farmworkerlaw.org
*Attorney for Plaintiffs*